**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MENESES LAW, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 4:26-cv-00552 |
| v. | § | |
| | § | |
| CAMILA OVERMYER, | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT CAMILA OVERMYER'S MOTION TO DISMISS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)
AND, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE
STATEMENT UNDER RULE 12(e)**

---

**INTRODUCTION**

Meneses Law sued Camila Overmyer for defamation. The Complaint quotes two excerpts from Ms. Overmyer's social-media posts. It then alleges, without identifying the words, context, or timing, that these are "just two examples" of "many" other defamatory statements. Compl. § 31.

As a threshold matter, this Court lacks personal jurisdiction over Ms. Overmyer. She is an Indiana resident. She has never been to Texas. She has no contacts with this forum. Her social-media posts were not aimed at Texas, and the mere fact that they are accessible here does not create jurisdiction. The Complaint should be dismissed under Rule 12(b)(2).

The two quoted excerpts fail as a matter of law. One uses the words "robbery" and "abuse" in the context of a heated advocacy campaign about immigration legal services. The other directs profanity at "all of you corrupt women attorneys"—a broadside at an indefinite

1

class, not a factual accusation about this firm. Neither excerpt states a verifiable fact. Both are the kind of rhetorical condemnation that courts have long held nonactionable. The unquoted "many statements" fare worse. The Complaint does not identify them.

The Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction, or under Rule 12(b)(6) for failure to state a claim. In the alternative, Plaintiff should be required to replead under Rule 12(e).

## BACKGROUND

### A.    Meneses Law faces fraud allegations in multiple federal courts.

Meneses Law faces serious allegations of systemic fraud in at least two other federal cases. The complaints in those cases, attached as Exhibits A and B, provide essential context for understanding the public controversy that Ms. Overmyer's speech addresses.

In *Martinez v. Meneses*, No. 1:25-cv-03979 (D. Colo. filed Dec. 12, 2025) ("the *Martinez* Complaint") (Ex. A), five immigration clients allege claims for legal malpractice, fraud, and breach of fiduciary duty. The Martinez Complaint alleges that Meneses Law created a "company-wide automated system" to rapidly acquire clients and file thousands of petitions under the Violence Against Women Act ("VAWA") without regard for the merit of the claims. Ex. A ¶¶ 34, 93. According to the complaint, the firm's paralegal pool routinely fabricated declarations accusing clients' own family members, including spouses and adult children, of "extreme abuse and cruelty," encompassing psychological, emotional, verbal, physical, sexual, and financial abuse. Ex. A ¶¶ 62, 67, 117. The firm then forged clients' electronic signatures on those declarations and filed them with USCIS, all without client knowledge or consent. Ex. A ¶¶ 65, 120–21. The complaint further alleges that Meneses Law's marketing intentionally omitted the VAWA requirement that a family member be accused of abuse, and that staff were pressured

to meet unreasonable quotas while the firm's principal devoted her time to internet advertising and social-media content rather than supervising case work. Ex. A ¶¶ 35–40, 81(f), 98. The plaintiffs allege they have been exposed to potential findings of inadmissibility for fraud under INA § 212(a)(6)(C)(i). Ex. A ¶¶ 104, 156.

In *Alexandra Lozano Immigration Law, PLLC v. Meneses Law, PLLC*, No. 4:24-cv-02190 (S.D. Tex. removed June 7, 2024) ("the Lozano Complaint," attached as Ex. B), Alexandra Lozano Immigration Law, a competing immigration firm, sued Meneses Law and a former Lozano employee, Juan Pablo Diaz Cuenca, asserting claims for trade-secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, as well as state-law claims for breach of contract, tortious interference, and unfair competition. The state court granted a temporary restraining order on May 31, 2024, just two days after the original state-court filing. The case was removed to this District on federal-question grounds and remains pending. The Lozano Complaint thus raises serious questions about Meneses Law's business practices, including allegations of trade-secret misappropriation, unfair competition, and deceptive use of a competitor's trademarks. Ex. B. It also describes the business model and operations that Meneses has modeled after Lozano's own practice. A business model that Lozano admits takes "a novel approach to serving the immigrant population" by utilizing the "Violence Against Women Act (VAWA) and Victims in Trafficking or "T" visas" which Lozano asserts are "underutilized and largely misunderstood" and that "can be used more broadly" to help immigrants obtain "work authorizations and make it possible to obtain green cards without having to leave the country to obtain legal status". *Id.* at 13-14. This business model has contributed to heightened scrutiny by the Department of Homeland Security on these applications due to the over 2000% increase in

the filing of these applications.[1] Together with the Martinez Complaint, it confirms that Meneses Law is the subject of active multi-front federal litigation concerning its business conduct, the very subject matter of Ms. Overmyer's speech.

Defendant attaches the Martinez Complaint (Ex. A) and the Lozano Complaint (Ex. B) not for the truth of their allegations, but to establish that the subject of Ms. Overmyer's speech—alleged misconduct by Meneses Law—is part of an ongoing, well-documented public controversy involving multiple federal lawsuits filed by the firm's own former clients and a competitor.

**B.      Ms. Overmyer's speech addresses matters of public concern.**

Ms. Overmyer uses TikTok and other platforms to discuss issues affecting immigrant communities. Compl. §§ 14–22. Starting in October 2025, she began posting about alleged problems at immigration law firms, including Meneses Law. *Id.* §§ 23–31. Her speech addresses the quality and integrity of legal services provided to vulnerable people, a subject of obvious public interest.

Ms. Overmyer's speech also addresses a subject of documented federal concern. USCIS reported in December 2025 that VAWA self-petition filings increased approximately 360% between fiscal years 2020 and 2024, with male self-petitioners increasing 259% and parent self-petitioners increasing 2,239%. See Fn. 1. USCIS described these trends as "alarming and unprecedented" and issued two policy alerts to combat fraud and protect program integrity. *Id.* In February 2025, former Bronx immigration attorney Kofi Amankwaa was sentenced to 70 months in federal prison for filing thousands of fraudulent VAWA petitions, forging abuse allegations

---

[1]
https://www.uscis.gov/newsroom/alerts/uscis-restores-integrity-to-the-vawa-domestic-abuse-program-after-finding-rampant-fraud  (Last visited March 31, 2026) USCIS, *Restores Integrity to the VAWA Domestic Abuse Program After Finding Rampant Fraud* (Dec. 22, 2025)

without client knowledge or consent, and collecting millions of dollars in fees. *See* U.S. Att'y's Off., S.D.N.Y., Press Release (Feb. 26, 2025).[2] Ms. Overmyer's commentary on alleged VAWA fraud by immigration law firms is thus squarely within a matter of active public concern and federal enforcement interest.

**C.    Meneses Law conditioned a routine extension on Ms. Overmyer's silence.**

When defense counsel sought a routine 30-day extension, Meneses Law conditioned the extension on Ms. Overmyer's agreement that she "would not mention [Meneses Law], directly or indirectly, in her social media posts or otherwise." Doc. 12 at 1. Meneses Law further demanded that Ms. Overmyer control what third-party callers and audience members said during her live social-media sessions, a demand that would require Ms. Overmyer to censor not only her own speech but the speech of her viewers. When Ms. Overmyer continued speaking, Meneses Law withdrew its agreement to the 30-day extension. *Id.* at 2. This sequence provides context for the nature of the dispute.

**LEGAL STANDARD AND AUTHORITIES**

**A.    Rule 12(b)(2).**

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if (1) the forum state's long-arm statute confers jurisdiction, and (2) the exercise of jurisdiction comports with due process. *Id.* Because the Texas long-arm statute extends to the limits of federal due process, the two inquiries

---

[2] https://www.justice.gov/usao-sdny/pr/bronx-former-attorney-sentenced-70-months-prison-large-scale-immigration-fraud   US. Atty SDNY, Bronx Former Attorney Sentenced To 70 Months In Prison For Large-Scale Immigration Fraud (February 26, 2025).

5

merge. *Id.* Due process requires that the defendant have "minimum contacts" with the forum state such that hauling the defendant into court "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Where, as here, a defendant's sole alleged contact with the forum is the accessibility of social-media posts, the "key question" is whether the forum state was "the focal point" of both the alleged defamation and the harm suffered. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021).

**B.      Rule 12(b)(6).**

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts as true but do not credit legal conclusions couched as factual allegations. *Id.* In considering a motion to dismiss, the court's review is limited to the complaint, documents attached to the complaint, and documents central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Courts may also take judicial notice of public records without converting the motion into one for summary judgment. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

**C.      Texas defamation: elements and threshold gatekeeping.**

To prevail on a claim for defamation under Texas law, a plaintiff must establish the publication of a false statement of fact to a third party that is defamatory concerning the plaintiff, made with the requisite degree of fault, and resulting in damages where required. *Dall. Morning*

*News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). The threshold inquiry is not whether the plaintiff has alleged each element in conclusory fashion, but whether the challenged publication is reasonably capable of a defamatory meaning at all. That determination is a question of law for the court and must be resolved at the outset. *Id.* at 624. If the statement is not reasonably capable of a defamatory meaning, the claim fails as a matter of law.

Courts apply an objective standard, construing the publication as a whole and evaluating its meaning from the perspective of a reasonable reader. *Id.* at 624–25. The analysis proceeds in two steps: first, whether the meaning alleged by the plaintiff is reasonably capable of arising from the text; and second, whether that meaning is reasonably capable of defaming the plaintiff. *Id.* at 624. Courts do not parse isolated words or phrases but instead consider the full context, including the publication's overall gist, tone, and setting. *Id.* at 625.

**D.      Constitutional limits: provability and reasonable interpretation.**

These state-law principles operate within the First Amendment. Defamation liability may be imposed only for statements that are provably false and that can reasonably be interpreted as stating actual facts about an individual. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20–21 (1990). Statements that do not contain a provably false factual connotation are entitled to full constitutional protection. *Id.* at 20. Statements that cannot reasonably be interpreted as asserting actual facts, such as rhetorical hyperbole, loose figurative language, or expressions of opinion that do not imply undisclosed defamatory facts, are not actionable. *Id.* at 20–21. The dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective, verifiable fact. *Id.* at 18–19.

The Supreme Court applied this principle in *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6 (1970), holding that accusations of "blackmail" in a heated public dispute

were nonactionable because no reasonable reader would take them as a literal charge of criminal extortion. *Id.* at 14. And in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988), the Court confirmed that speech not reasonably interpretable as stating actual facts receives full First Amendment protection.

**E.      Texas refinement: context, rhetoric, and the "criminal organization" analogy.**

Texas law is consistent with these constitutional limits. A statement not verifiable as false cannot give rise to defamation liability. *Tatum*, 554 S.W.3d at 623. Even where a statement is theoretically verifiable, it remains nonactionable if the entire context in which it was made demonstrates that it is opinion or rhetorical expression rather than an assertion of fact. *Id.*

The Texas Supreme Court applied this framework in *Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023). There, the defendant called reproductive-rights organizations "criminal organizations." The Court held the statement nonactionable because a reasonable reader, viewing the full context of heated public-policy advocacy, would understand it as advocacy about legality and morality, not a verifiable claim about criminal conduct. *Id.* at 368–70. The Court emphasized that actionability is a threshold question of law and that courts must guard against strained or hyper-attenuated interpretations that no objectively reasonable reader would draw. *Id.* at 370. Where a statement is directed at a broad class, a plaintiff must show the statement "concerns" the plaintiff specifically, judged by a reasonable reader in context. *Id.* at 367.

A federal court in this Circuit reached a similar result in *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519 (W.D. Tex. 2021), dismissing a defamation claim under Rule 12(b)(6) where the challenged characterizations were opinions based on disclosed facts and did not constitute verifiable assertions of fact. *Id.* at 535.

**F.      Substantial truth.**

Under the substantial-truth doctrine, minor inaccuracies do not amount to falsity so long as "the substance, the gist, and the sting" of the statement is justified. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). A statement is not actionable if, in the mind of an average reader, the allegedly defamatory statement is not more damaging than a truthful statement would have been. *Id.*

**G.      Damages: per se, exemplary, and constitutional limits.**

Defamation per se applies to statements of fact so obviously harmful that general damages are presumed. *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015). The doctrine does not apply to rhetorical hyperbole or expressions of opinion. *Id.*

Constitutional limits further restrict the available remedies. When speech involves a matter of public concern, presumed and punitive damages require proof of actual malice—knowledge of falsity or reckless disregard for the truth. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974). The public-concern/private-concern distinction controls the scope of these constitutional restrictions. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757–61 (1985).

**H.      Pleading specificity in defamation cases.**

Where a defamation claim is challenged at an early stage, the plaintiff must do more than recite the elements. The plaintiff must provide clear and specific evidence of a prima facie case for each essential element, including the particular statements at issue, their defamatory nature, and the basis for any alleged falsity. *In re Lipsky*, 460 S.W.3d at 590–91. General allegations, bare conclusions, and vague assertions are insufficient. *Id.* at 592–93. The plaintiff must identify the who, what, when, and where of the alleged defamation. *Id.* at 591. While *Lipsky* arises in the

TCPA context, courts routinely rely on its articulation of the specificity required in defamation pleadings. Absent such specificity, the claim is subject to dismissal.

These principles impose a threshold the court resolves as a matter of law. The court must determine whether the publication is reasonably capable of conveying the alleged defamatory meaning. The First Amendment requires that the statement be provably false and reasonably interpreted as asserting actual facts. And the plaintiff must support the claim with clear and specific factual allegations. Failure at any stage is fatal.

## PRELIMINARY MATTERS

**A.      Judicial notice.**

Defendant asks the Court to take judicial notice under Federal Rule of Evidence 201 of two public filings:

1.      The Complaint in *Martinez v. Meneses*, No. 1:25-cv-03979 (D. Colo. Dec. 12, 2025), ECF No. 6 (attached hereto as Ex. A); and

2.      The Notice of Removal in *Lozano v. Meneses Law*, No. 4:24-cv-02190 (S.D. Tex. June 7, 2024), ECF No. 1 (attached hereto as Ex. B).

These documents are judicially noticeable as public records. *Taylor*, 162 F.3d at 830; *Norris*, 500 F.3d at 461 n.9.

**B.      The entire lawsuit targets speech.**

Every factual allegation in the Complaint traces to Ms. Overmyer's social-media posts and livestreams. Compl. ¶¶ 23–45. No independent tortious conduct is alleged. The speech is not incidental to the claim. It is the claim.

**ARGUMENT**

Defamation law does not protect against sharp criticism, advocacy, or rhetorical condemnation—even when offensive or unfair. It protects against false statements of fact. The Complaint does not plead one. And as a threshold matter, this Court lacks personal jurisdiction over Ms. Overmyer.

## I.     The Court lacks personal jurisdiction over Ms. Overmyer.

Ms. Overmyer is a resident of Gosport, Indiana. She has never been to Texas. She owns no property in Texas, conducts no business in Texas, and has no contacts with this forum of any kind. The Complaint does not allege otherwise. Accordingly, neither general nor specific personal jurisdiction exists. *See* Fed. R. Civ. P. 12(b)(2).

General jurisdiction exists only where the defendant is "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For an individual, that means her domicile. *Id.* Ms. Overmyer is domiciled in Indiana. General jurisdiction is absent.

Specific jurisdiction requires that the defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). And the defendant's contacts must be the defendant's own—not contacts attributable to the plaintiff's presence in the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Fifth Circuit has applied these principles to hold that an out-of-state defendant who publishes allegedly defamatory content on a nationally accessible website is not subject to personal jurisdiction in Texas merely because the content is viewable here. In *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), the court dismissed a Texas resident's

11

libel claim against HuffPost because the defendant had no physical ties to Texas and the allegedly defamatory article "ha[d] no ties to Texas." *Id.* at 318. The court held that "mere accessibility cannot demonstrate purposeful availment." *Id.* at 321. Instead, the "key question" is whether the forum state was "the focal point" of both the alleged defamation and the harm suffered. *Id.* at 318 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)).

This case is indistinguishable from *Johnson*. Ms. Overmyer is an Indiana resident who posted on TikTok and other nationally accessible platforms. She has no physical ties to Texas. Her posts do not mention Texas, do not rely on Texas sources, and were not directed at a Texas audience as distinct from any other audience. Texas is not the focal point of either the speech or the alleged harm. That Plaintiff resides in Texas does not establish that Ms. Overmyer targeted Texas; generalized nationwide dissemination, even where a defendant knows content may reach the forum, does not establish jurisdiction absent forum-specific targeting. Johnson, 21 F.4th at 321. The only connection to Texas is that Meneses Law happens to have filed suit here. But a plaintiff's contacts with the forum "cannot be decisive in determining whether the defendant's due process rights are violated." *Walden*, 571 U.S. at 284 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

The Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

## II.     The unquoted "many statements" must be dismissed or re-pleaded.

The Complaint alleges that its two quoted excerpts are "just two examples" of "many false and defamatory statements." Compl. 31. But it never identifies the others. It does not say what words were used, when they were published, or in what context they appeared. A defamation plaintiff must plead the "when, where, and what was said." *Lipsky*, 460 S.W.3d at 591. This defect alone requires dismissal of any claim based on unidentified statements.

In the alternative, Plaintiff should be ordered to re-plead under Rule 12(e). The Complaint's deficiencies extend beyond the unidentified "many statements." Even as to the two quoted excerpts, the Complaint fails to allege the date of publication, the specific platform on which each statement appeared, the full context of the posts, or the identity of any person who viewed or relied on the statements. It does not identify which specific clients allegedly terminated their relationships based on which specific statements. It does not allege when the alleged actual malice arose or what facts support it. Without this information, Defendant cannot frame a responsive pleading, assert privilege or truth defenses, evaluate the context in which the statements were made, or meaningfully respond to the damages theories. Rule 12(e) exists precisely for this situation: a pleading "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Complaint's failure to commit to specific statements is not an oversight—it is a litigation strategy that deprives Defendant of fair notice and prevents meaningful evaluation of context, truth, and privilege defenses.

### III.     The two quoted excerpts are nonactionable as a matter of law.

#### A.      *"Robbery" and "abuse" are rhetorical hyperbole, not verifiable facts.*

The first excerpt comes from a video titled "FALSE VAWA WITH MENESES." In a longer advocacy post, Ms. Overmyer called the firm's practices "[t]his robbery" and "[t]his abuse of our community." She urged followers to submit "sworn testimony" and said the effort would "save many people." Compl. ¶¶ 27–28.

In context, this is not a factual accusation but rhetorical advocacy. The Texas Supreme Court confronted similar language in *Lilith Fund*. There, the defendant called reproductive-rights organizations "criminal organizations." The Court held the statement nonactionable because a

reasonable reader, viewing the full context, would understand it as advocacy—not a verifiable claim about criminal conduct. 662 S.W.3d at 368–70.

The Supreme Court reached the same result in *Greenbelt*. Accusations of "blackmail" in a public dispute were nonactionable because no reasonable reader would take them as a literal charge of criminal extortion. 398 U.S. at 14. The same principle applies to "robbery" and "abuse" used as condemnations of perceived exploitation on TikTok. No reasonable reader would interpret this language as a literal accusation of criminal conduct. *See Milkovich*, 497 U.S. at 21.

**B.      *"Corrupt women attorneys" is not "of and concerning" Meneses Law.***

The second excerpt quotes Ms. Overmyer addressing 'all of you corrupt women attorneys.' Compl.    30. Statements about a broad, undefined class are not actionable unless the plaintiff is specifically identified or unmistakably implicated. Crucially, Plaintiff Meneses Law, PLLC is a corporate entity. As a matter of law, a professional limited liability company has no gender. A reasonable viewer would not understand a rhetorical attack on 'women attorneys' as a factual assertion 'of and concerning' a genderless corporate entity. The Complaint pleads no facts showing that a reasonable viewer would understand this statement to refer to Plaintiff specifically. A generalized insult directed at an indefinite class, untethered to specific factual content about the plaintiff, does not satisfy the "of and concerning" requirement. *Lilith Fund*, 662 S.W.3d at 367. *See also Parker*, 569 F. Supp. 3d at 535.

**IV.      No verifiable factual assertion is pleaded, so falsity cannot be evaluated.**

The Complaint says Ms. Overmyer's statements "were false and defamatory." Compl. 49. That is a label, not a fact. The Complaint never identifies a specific factual proposition and then explains why it is false. If the Court cannot locate a verifiable factual assertion on the face

of the Complaint, it cannot assess falsity. The claim fails at the threshold. *Tatum*, 554 S.W.3d at 638–39.

Even if the quoted excerpts could be construed as factual, the Complaint still fails because it does not plead falsity with any supporting facts. Under the substantial-truth doctrine, speech is not actionable if its 'gist' or 'sting' is justified. Here, multiple federal lawsuits, filed by the firm's own former clients, allege that Meneses Law utilizes a 'company-wide automated system' to forge client signatures and fabricate declarations of abuse. Martinez, Ex. A ¶¶ 32-34. Because Ms. Overmyer's characterizations of 'robbery' and 'abuse' mirror the specific factual allegations of fraud and forgery currently pending in federal court, Plaintiff cannot plausibly allege that the 'gist' of her speech is false. These complaints confirm that Ms. Overmyer's speech is commentary on a public controversy, not a discrete verifiable accusation. It asserts the label "false" without identifying what factual proposition is wrong or why.

The Martinez Complaint (Ex. A) alleges that Meneses Law ran a company-wide system to fabricate VAWA declarations and forge client signatures, while the Lozano Complaint (Ex. B) accuses the firm of trade-secret misappropriation. These complaints—filed by the firm's own former clients and by a competitor—confirm that Ms. Overmyer's speech is commentary on a public controversy, not a discrete verifiable accusation. Defendant does not rely on those allegations for their truth. She relies on them to show that the Complaint's conclusory assertion of "falsity" is implausible on its face. Under the substantial-truth doctrine, speech addressing allegations that have been raised in multiple public filings undermines any plausible allegation of falsity at the pleading stage. *Masson*, 501 U.S. at 517.

15

**V.    The fault and damages allegations do not support the remedies Plaintiff seeks.**

The Complaint pleads fault in a single sentence: Ms. Overmyer acted "with actual malice, or alternatively, with negligence." Compl.    52. No supporting facts follow.

That matters because of what Plaintiff asks for. Plaintiff seeks exemplary damages and presumed damages through a "defamation per se" theory. Compl. ¶¶ 53–54. But the Constitution restricts those remedies. When speech involves a matter of public concern, presumed and punitive damages require proof of actual malice. *Gertz*, 418 U.S. at 349–50; *Dun & Bradstreet*, 472 U.S. at 757–61. Ms. Overmyer's speech plainly involves a matter of public concern. Plaintiff has not pleaded facts sufficient to support per se or exemplary damages.

As to economic damages, the Complaint alleges "at least ten" client terminations. Compl.   39. But it draws no line between a particular statement and a particular lost client. *See Twombly*, 550 U.S. at 570.

The per se theory fails independently. Per se treatment is reserved for statements of *fact* so harmful that damages are presumed. *Lipsky*, 460 S.W.3d at 596. Rhetorical hyperbole and opinion do not qualify.

Plaintiff also seeks attorney's fees. Compl. at 15. Texas defamation law does not authorize fee-shifting, and the Complaint identifies no statute or contract that does. The fee request should be struck.

**CONCLUSION**

The Court should dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, the Court should dismiss the Complaint under Rule 12(b)(6). At minimum, it should dismiss any theories based on the unidentified "many statements" and order Plaintiff to re-plead under Rule 12(e) with the specificity that defamation law demands.

Defendant does not seek Rule 11 sanctions by this motion. *See* Fed. R. Civ. P. 11(c)(2). Defendant reserves the right to seek sanctions by separate motion in compliance with Rule 11's safe-harbor requirement.

Defendant also reserves the right to seek attorney's fees under § 27.009 of the Texas Citizens Participation Act as a substantive remedy, notwithstanding *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019). Defendant preserves this issue for post-judgment motion and appeal.

Respectfully submitted,

**AVANTI LAW GROUP PLLC**

/s/ *Robert Anthony Alvarez, Sr.*
Robert Anthony Alvarez, Sr.
MI Bar No. P66954
Tx. Bar No. 3961057
Attorney In Charge
Avanti Law Group PLLC
600 28th St. SW
Wyoming, MI 49509
Tel: (616) 257-6807
ralvarez@avantilaw.com

**ATTORNEY FOR DEFENDANT**
**CAMILA OVERMYER**

**CERTIFICATE OF SERVICE**

I certify that on March 31, 2026, a true and correct copy of the foregoing was filed via CM/ECF, which will send notification to all counsel of record.

/s/ *Robert Anthony Alvarez, Sr.*
Robert Anthony Alvarez, Sr.

18