**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MENESES LAW, PLLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:26-cv-00552 |
| | § | |
| CAMILA OVERMYER, | § | |
| *Defendant.* | § | Jury Trial Demanded |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# Table of Contents

I. INTRODUCTION AND THE NATURE AND STAGE OF THE PROCEEDINGS............ 5

II. ISSUES TO BE RULED UPON.................................................................................. 6

III. ARGUMENT AND AUTHORITIES: OPPOSITION TO DEFENDANT'S RULE 12(b)(2) MOTION (REGARDING SPECIFIC PERSONAL JURISDICTION) ......................... 7

    A. Legal Standards:............................................................................................... 7

    B. Argument: .......................................................................................................... 8

        i. Ms. Overmyer's Motion does not dispute most of Meneses Law's jurisdictional facts—and for the ones she does facially dispute, she provides no controverting evidence............. 8

        ii. This Court has specific personal jurisdiction because Texas was the focal point both of Ms. Overmyer's defamation campaign and of the resultant harm....................................... 9

        iii. Given the above, this Court has jurisdiction over Ms. Overmyer for this dispute. .. 11

IV. ARGUMENT AND AUTHORITIES: OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION (REGARDING DEFAMATION)................................................................. 11

    A. Preliminary Note ............................................................................................. 11

    B. Legal Standards:............................................................................................. 12

    C. Argument: ........................................................................................................ 12

        iv. Element 1a (publication to a third party…): Ms. Overmyer's allegations have received thousands of views and have been widely commented on. .................................... 12

        v. Element 1b (… of purported statements of fact…): Ms. Overmyer's allegations contain concrete statements of purported fact. ................................................................. 12

        vi. Element 1c (…which are false): Ms. Overmyer's allegations are false. .................. 13

        vii. Element 2a (Ms. Overmyer's allegations are defamatory…): Ms. Overmyer does not contest that her allegations are defamatory in nature............................................................ 14

        viii. Element 2b (… regarding Meneses law): Ms. Overmyer's allegations clearly identify Meneses Law. ......................................................................................................... 14

        ix. Element 3 (the requisite degree of fault): Ms. Overmyer's allegations were at least negligent, if not malicious.................................................................................................. 15

        x. Element 4 (damages): The Complaint specifically identifies damages resulting from Ms. Overmyer's allegations. ............................................................................................ 15

        xi. In sum, the Complaint far exceeds the pleading standard. ..................................... 16

V. ARGUMENT AND AUTHORITIES: DEFENDANT'S RULE 12(e) MOTION ............... 16

    A. Legal Standards:............................................................................................. 16

    B. Argument: ........................................................................................................ 17

VI. CONCLUSION.................................................................................................... 18

Page(s)

Cases

21 F.4th 314 (5th Cir. 2021) ............................................................... 8, 11
*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ................................................................... 6
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................... 12, 16
*Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*,
  235 F.R.D. 632 (E.D. La. 2006) .......................................................... 17
*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................................... 7, 8
*Duresseau v. Camping World of Lafayette*,
  2018 WL 3624122 (W.D. La. July 10, 2018) ....................................... 17
*Hancock v. Variyam*,
  400 S.W.3d 59 (Tex. 2013) ................................................................. 12
*Hawbecker v. Hall*,
  88 F.Supp.3d 723 (W.D. Tex. 2015)............................................... 7, 8, 11
In re Lipsky,
  460 S.W.3d........................................................................... 11, 12, 13
*Innovative Block v. Valley Builders Sup.*, 603,
  21 S.W.3d 409 (Tex. 2020)................................................................. 14
*Jackson v. City of Beaumont Police Dep't*,
  958 F.2d 616 (5th Cir. 1992) ................................................................ 6
*Klocke v. Watson*,
  936 F.3d 240 (5th Cir. 2019) .............................................................. 11
*Lilith Fund for Reprod. Equity v. Dickson*,
  662 S.W.3d 355 (Tex. 2023)............................................................... 12
*Luv N' care, Ltd. v. Insta-Mix, Inc.*,
  438 F.3d 465 (5th Cir. 2006) ............................................................ 7, 8
*Mitchell v. E-Z Way Towers, Inc.*,
  269 F.2d 126 (5th Cir. 1959) .............................................................. 17
*Old Time Enterprises, Inc. v. Int'l Coffee Corp.*,
  862 F.2d 1213 (5th Cir. 1989) .............................................................. 7
*Palestine Herald-Press Co. v. Zimmer*,
  257 S.W.3d 504 (Tex. App.—Tyler 2008, pet. denied)........................... 13
*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) .......................................................... 7, 11
*See*,
  571 U.S. 277 (2014)............................................................................ 8
*Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*,
  517 F.3d 235 (5th Cir. 2008) ................................................................ 7
*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ............................................................ 7, 9

Statutes

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ 27.001 .................................................................. 6, 11

Rules

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ...................................... 5
RULE 12(b)(2)......................................................................................................... 7
Rule 12(b)(6).......................................................................................................... 6
Rule 12(e).............................................................................................................. 5, 6

Plaintiff Meneses Law, PLLC Responds to Defendant Camila Overmyer's "Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and, in the Alternative, Motion for More Definite Statement Under Rule 12(e)" (D.I. 15, the "Motion"), and shows:

## I. INTRODUCTION AND THE NATURE AND STAGE OF THE PROCEEDINGS

This lawsuit is a defamation case that is in the early stage of proceedings (Ms. Overmyer has not yet filed an Answer) before this Court on diversity jurisdiction.

As detailed in the Complaint, this lawsuit was the result of Ms. Overmyer's continued attempts to gain traction as a social media influencer. Though she initially targeted the health and beauty audience (revolving around gym workouts, self-motivation, hair care/beauty, health, and general trends), Ms. Overmyer eventually found an audience as the self-styled "Reyna de la belleza y la JUSTICIA" (Queen of beauty and justice), with a focus on immigration law despite her not being an attorney.



Ms. Overmyer's newfound success owed much to her scurrilous allegations that various immigration attorneys had engaged in unethical and criminal behavior. After amassing her newfound contingent of followers, Ms. Overmyer launched a targeted campaign against Meneses Law beginning on October 28, 2025. She streamed her first livestream[1] and subsequently made her first posts mentioning Meneses Law that same day,[2] and these videos received a large number

---

[1] A livestream is when a user broadcasts live (and often interactively) to their viewers.
[2] Ex. F (Screenshot from Overmyer's 2025-12-05 TikTok tearing up the demand for retraction correspondence she received from Meneses Law).

of views.[3] Over the following weeks, Ms. Overmyer built on this by repeatedly targeting her Texas audience with baseless allegations that Meneses Law had engaged in a scheme of filing fraudulent petitions for immigration relief under the Violence Against Women Act (VAWA). Her allegations in those livestreams are central to this lawsuit.

After a failed attempt to resolve Ms. Overmyer's defamation without litigation (Ms. Overmyer tore up the retraction request letter[4]), Meneses Law filed the Complaint in this suit (D.I. 1, Nov. 21, 2026)—the subject of the present Motion. The Complaint raises one cause of action (Defamation) and supports it with detailed factual pleadings showing each element. *See, e.g.*, D.I. 1 at ¶¶ 8–9, 23–45, 47–54. The Complaint asserts that Texas has specific jurisdiction over Ms. Overmyer because Texas is the focal point both of Ms. Overmyer's defamation campaign and of the resulting harm to Meneses Law. *See, e.g.*, D.I. 1 at ¶¶ 5–9, 17, 37–39, and 45.

## II.     ISSUES TO BE RULED UPON

Though Ms. Overmyer's Motion is lengthy, most of it is irrelevant, leaving only three issues that must be ruled upon by the Court:

**Issue 1: Whether this Court has specific personal jurisdiction over Ms. Overmyer for this litigation.** "Personal jurisdiction is a question of law reviewed *de novo*." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) (emphasis added). In this case, the Court has specific personal jurisdiction because Texas is the focal point both of Ms. Overmyer's defamation campaign and of the resulting harm to Meneses Law.

**Issue 2: Whether Meneses Law has adequately pled its claim of defamation.** "A district court's ruling on a Rule 12(b)(6) motion is subject to *de novo* review." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992) (emphasis added). Meneses Law's complaint meets the *Twombly*/*Iqbal* pleading standard, and Ms. Overmyer's arguments on this issue address the wrong standard (*i.e.*, the standard for a motion to dismiss under the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE 27.001 *et seq.*, which is not applicable in this case).

**Issue 3: Whether the Court should, in the alternative to a Rule 12(b)(6) dismissal, order Meneses Law to re-plead its claim of defamation.** "Rule 12(e) orders are reviewed under an

---

[3] *See, e.g.*, Complaint at ¶ 25 (Showing a screenshot of several of Ms. Overmyer's videos—the October 28th videos both had tens of thousands of views).
[4] Ex. F.

***abuse of discretion*** standard." *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (emphasis added). As discussed below, there are no deficiencies in Meneses Law's pleadings, so there is no need for a more definite statement.

Each of these three issues is discussed, in turn, in Sections III, IV, and V, below.

### III. ARGUMENT AND AUTHORITIES: OPPOSITION TO DEFENDANT'S RULE 12(b)(2) MOTION (REGARDING SPECIFIC PERSONAL JURISDICTION)

"[I]f you are going to pick a fight in Texas, it is reasonable to expect that it be settled there." *Hawbecker v. Hall*, 88 F.Supp.3d 723, 730 (W.D. Tex. 2015) (citing *Revell v. Lidov*, 317 F.3d 467, 469, 476 (5th Cir. 2002)). As detailed below, Ms. Overmyer has picked a fight in Texas, and therefore this Court has jurisdiction in this case.

### A. Legal Standards:

At the motion to dismiss stage, a plaintiff faces a low bar: it "need not … establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient." *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). Moreover, the Court "must resolve ***all undisputed facts*** submitted by the plaintiff, as well as ***all facts contested in the affidavits***, in favor of jurisdiction." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has explained why: "Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

For assessing specific personal jurisdiction in the context of defamatory media, courts use a more targeted framework than that of *International Shoe* and *Burger King*. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that California courts had specific personal jurisdiction over a Florida-based reporter and editor who had published an article in Florida about a California entertainer. The Court emphasized that the reporter and editor's "intentional, and

allegedly tortious, actions were expressly aimed at California" because the defendants "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works," and held that an "individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." 465 U.S. 783, 789–90. In *Walden v. Fiore*, the Supreme Court elaborated on this analysis, stating that *Calder* was not based merely on the location of the plaintiff, but also on the location of the reputational effects. *See* 571 U.S. 277, 288 (2014) ("the 'effects' caused by the defendants' article—*i.e.,* the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California,* not just to a plaintiff who lived there.").

The Fifth Circuit and the Western District of Texas have elaborated on this analysis in the context of internet posts and social media. In *Johnson v. TheHuffingtonPost.com, Inc.*, the Fifth Circuit clarified that specific personal jurisdiction exists in the state that is "***the focal point both of the alleged libel and of the harm suffered***." 21 F.4th 314, 318 (5th Cir. 2021) (quoting *Calder*, 465 U.S. at 789) (internal quotations and markup omitted). And in *Hawbecker v. Hall*, the Western District of Texas held that specific personal jurisdiction existed where the defendant had "expressly aimed online contacts," including Facebook posts and emails, "to Texas residents and intended the focal point and brunt of her posts and interactions to be felt … in Texas." 88 F. Supp. 3d 723, 730 (W.D. Tex. 2015).

**B.      Argument:**

   **i.      *Ms. Overmyer's Motion does not dispute most of Meneses Law's jurisdictional facts—and for the ones she does facially dispute, she provides no controverting evidence.***

Because Ms. Overmyer does not dispute most of the jurisdictional facts stated in Meneses Law's Complaint, those facts must be accepted as true. *See Luv N' care, Ltd.*, 438 F.3d at 469. And even where she does raise a few conclusory allegations of her own in support of her

arguments, she provides ***no supporting evidence whatsoever***: no affidavits, no documents, and no supporting materials. The factual basis for her jurisdictional argument is entirely unsourced (whereas Meneses Law provides evidentiary support for its own arguments).

Worse, many of Ms. Overmyer's unsupported factual claims are easily disproven. For example, on page 12 of her Motion, Ms. Overmyer claims that her "posts do not mention Texas, do not rely on Texas sources, and were not directed at a Texas audience as distinct from any other audience." But all three of these claims are wrong: in the posts at issue—the posts that were defamatory against Meneses Law—Ms. Overmyer repeatedly mentioned Texas,[5] she relied on allegations from livestream guests in Texas,[6] brought Texas-based attorneys to join her on TikTok,[7] and she specifically sought assistance from clients of Meneses Law in bringing grievances before the Texas Attorney General and the Texas Bar.[8]

In short, there is no meaningful factual dispute: Meneses Law's jurisdictional allegations ***must be taken as true***. The only question is whether those facts establish a prima facie case for personal jurisdiction—and they do. *Wyatt*, 686 F.2d at 280.

> ### ii. *This Court has specific personal jurisdiction because Texas was the focal point both of Ms. Overmyer's defamation campaign and of the resultant harm.*

<u>*Ms. Overmyer's defamatory videos and livestreams directly targeted a Texan audience:*</u>

Ms. Overmyer's defamatory videos and livestreams at issue in this case focus on Meneses Law[9]—a Texas-based law firm with a clientele that is primarily in Texas.[10] The subject matter of

---

[5] *See* Ex. A at 5; *See* Ex. B (Transcript of 2025-11-08 Overmyer TikTok post) at 3; Overmyer TikTok (Nov. 8, 2025), https://www.tiktok.com/@camilaovermyer87/video/7570381133301484855 (Ms. Overmyer deleted this TikTok since the filing of this lawsuit).

[6] *See* Ex. A at ¶ 6; *see also* Ex. C (Transcript of 2026-01-08 Overmyer TikTok post) at 87-88.

[7] *See* Ex. A at 8; *See also* C at 7, 32, and 75 (offering Texans a discount to consult with a guest attorney—Greg Price from Saenz Garcia law firm—who lives in Texas and works in Texas at a Texas law firm).

[8] *See* Ex. A at 5; *see also* Ex. B at 3.

[9] *See, e.g.*, Exs. A-E.

[10] *See* Complaint at ¶¶ 6, 37. Ms. Overmyer does not dispute these jurisdictional facts (*see, e.g.,* Mot. at 11–12).

these videos and livestreams was her allegation that Meneses Law had committed fraud against and on behalf of its clients in Texas.[11] Ms. Overmyer hosted guests from Texas to discuss her allegations against Meneses Law,[12] and she specifically sought assistance from clients of Meneses Law in bringing grievances against Meneses Law before the Texas Attorney General and the Texas Bar.[13] Ms. Overmyer even used one of those livestreams to refer Meneses Law's clients to a competing law firm in Texas.[14]

*Ms. Overmyer's defamatory videos and livestreams had the intent—and actual effect—of harming Meneses Law's business and reputation in Texas:*

The brunt of the harm suffered by Meneses Law to its business and reputation has been in Texas. Specifically, Meneses Law is a Texas-based law firm with a clientele that is primarily in Texas.[15] In the two months leading up to the complaint, Meneses Law has been flooded with calls from current, now-former, and potential clients calling specifically about Ms. Overmyer's false statements and accusations—the vast majority of these calls are made by Texas residents.[16]

*Ms. Overmyer applies the wrong legal standard:*

In her arguments against specific personal jurisdiction, Ms. Overmyer improperly focuses on her own location and ties—she argues that "Ms. Overmyer is an Indiana resident who posted on TikTok and other nationally accessible platforms. She has no physical ties to Texas." Mot. at 12. In effect, she is addressing the wrong issue: ***general*** personal jurisdiction. But in assessing ***specific*** personal jurisdiction, a Court should not look at the location of "who provoked the

---

[11] *See* Ex. A at ¶ 9; *see also* Ex. E (Transcript of Overmyer's 2025-11-02 TikTok Post) at 3-4.

[12] *See, e.g.*, Ex. C 7, 32, 75, 87-88.

[13] *See* Ex. B at 3 (Overmyer asking followers who are Meneses Law's clients to provide testimony and a copy of their contract for submission to the Texas Attorney General and Texas Bar).

[14] *See* Complaint at ¶ 34 (On her Nov. 8th livestream, Ms. Overmyer hosted a competing attorney who appeared under a banner reading "[p]ara consultar mensaje de texto (469)629-2843"—*i.e.*, to consult, send a text message to Saenz-Garcia law, a DFW-area immigration firm).

[15] *See id.* at ¶¶ 6, 37. Overmyer does not dispute these jurisdictional facts (*see, e.g.,* Mot. at 11–12).

[16] *See id.* at ¶¶ 6, 37 (Overmyer not disputing jurisdictional facts).

fight"—instead, the proper focus is on the location of the fight that is being picked. *Hawbecker*, 88 F.Supp.3d at 730 (W.D. Tex. 2015) (citing *Revell*, 317 F.3d at 469, 476).

### iii. Given the above, this Court has jurisdiction over Ms. Overmyer for this dispute.

In sum: all underlying facts must be resolved in favor of jurisdiction—and those facts clearly establish that this Court has jurisdiction over Ms. Overmyer. She targeted her defamatory statements at a Texas law firm and a Texas audience, and the resulting harm was felt in Texas. Ms. Overmyer's unsupported arguments focus on the wrong issues. Specific personal jurisdiction exists where Texas is "the focal point both of the alleged libel and of the harm suffered." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th at 318. That standard is met here.

## IV. ARGUMENT AND AUTHORITIES: OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION (REGARDING DEFAMATION)

### A. Preliminary Note

The portion of Ms. Overmyer's Motion seeking dismissal under Rule 12(b)(6) is based on the wrong standard: although this is a federal case in which the *Twombly/Iqbal* pleading standard applies (and is met), Ms. Overmyer incorrectly argues that:

> "The plaintiff must provide clear and specific evidence of a prima facie case for each essential element, including the particular statements at issue, their defamatory nature, and the basis for any alleged falsity. *In re Lipsky*, 460 S.W.3d at 590–91."

Mot at 9. But, *In re Lipsky* is a **Texas state court** case applying the elevated standard from the Texas Citizens Participation Act's dismissal procedure (the "Anti-SLAPP statute"), TEX. CIV. PRAC. & REM. CODE 27.001 *et seq.* The TCPA does not apply in federal diversity cases. *See Klocke v. Watson*, 936 F.3d 240, 245–46 (5th Cir. 2019). Instead, the Twombly/Iqbal pleading standard governs—a lower bar than the TCPA's "clear and specific evidence" requirement. *See id.* Ms. Overmyer's reliance on the wrong standard undermines her arguments on falsity and fault.

**B.**     **Legal Standards:**

Unlike the TCPA's "clear and specific evidence" standard, to survive a Rule 12(b)(6) motion to dismiss, the *Twombly/Iqbal* pleading standard requires only that a plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted).

"Defamation is generally defined as the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). The elements of defamation are: (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault (negligence if plaintiff is a private individual; actual malice if plaintiff is a public figure or official), and (4) damages, in some cases. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "It is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *In re Lipsky*, 460 S.W.3d at 594.

**C.**     **Argument:**

> **iv.**     ***Element 1a (publication to a third party…): Ms. Overmyer's allegations have received thousands of views and have been widely commented on.***

Ms. Overmyer does not appear to contest that Meneses Law has adequately pled this part of Element 1, but for the avoidance of doubt: Paragraphs 22, 23, 25, and 36–39 of the Complaint plausibly allege that Ms. Overmyer published the social media posts and livestreams at issue widely to her thousands of followers on TikTok (receiving thousands of views).

> **v.**     ***Element 1b (… of purported statements of fact…): Ms. Overmyer's allegations contain concrete statements of purported fact.***

For "a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied). Here, Ms. Overmyer has made concrete allegations against Meneses Law, accusing the firm of (among other things) filing "FALSE VAWA" (*i.e.*, fraudulent petitions for immigration relief). Complaint at ¶ 27. As part of the same campaign of defamation, Ms. Overmyer has characterized Meneses Law as robbers and abusers that have created victims. Complaint at ¶¶ 27–30. Together, these assert and imply objectively verifiable facts about Meneses Law's conduct in carrying out its work and meeting its ethical obligations.

Ms. Overmyer's Motion attempts to brush off these allegations as mere hyperbole: she examines each defamatory statement in isolation and argues (in that myopic framework) that they should be construed as mere opinion. *See* Mot. at 13–14. But this is what *In re Lipski* cautions against: "the meaning of a publication … ***depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements***." 460 S.W.3d at 594.

This is distinguishable from the situation in *Lilith Fund* that Ms. Overmyer relies on (Compl. at 13–14). There, the defendant characterized an abortion provider's actions as "murder" (and characterized the abortion provider itself as a "criminal organization"), but the defendant was always clear on its basis for those characterizations. In contrast, here, Ms. Overmyer has expressly accused Meneses Law of filing fraudulent petitions for immigration relief as the underlying basis for her characterization of the firm as robbers and abusers that have created victims. Compl. at ¶¶ 27–30. Based on the entirety of her statements, a viewer would not perceive Ms. Overmyer's allegations as mere hyperbole.

### vi.    Element 1c (…which are false): Ms. Overmyer's allegations are false.

Ms. Overmyer's Motion skirts around the issue of falsity—she argues that "falsity cannot be evaluated." The closest she comes to arguing that her allegations of fraud and criminal conduct

13

were not false is on page 15 of her Motion: she compares her own unfounded allegations against Meneses Law to prior unfounded allegations against Meneses Law, and argues that her allegations are close enough as to be "substantially true." *See* Mot. at 15. But this analysis is entirely invalid: Ms. Overmyer relies on extrinsic evidence and assumies that the Lozano's fabricated allegations are true, when all it establishes is that she maliciously piggybacked off of the allegations in another lawsuit to gain followers and money.

To be clear, as explained in the Complaint, Ms. Overmyer's allegations are unequivocally false. *See* Compl. at ¶¶ 6 (stating that Ms. Overmyer's allegations are false), 12–13 (laying out the guiding principles of Meneses Law, which is based on strict moral principles), 26 (stating that Ms. Overmyer's allegations are false and that she had "no ability to verify her statements"), 30 (giving examples of Ms. Overmyer's false statements).

   vii.    ***Element 2a (Ms. Overmyer's allegations are defamatory…): Ms. Overmyer does not contest that her allegations are defamatory in nature.***

A defamatory statement is one that tends to harm or lower the plaintiff's reputation within or deter others from associating or dealing with the plaintiff. *See Innovative Block v. Valley Builders Sup.*, 603 21 S.W.3d 409, 417 (Tex. 2020). Ms. Overmyer does not appear to contest this element, but for the avoidance of doubt: Paragraphs 27–30 of the Complaint plausibly allege that Ms. Overmyer has accused Meneses Law of intentionally filing fraudulent petitions for immigration relief under the Violence Against Women Act ("VAWA") to the detriment of its clients. Ms. Overmyer's allegations are clearly of the type that would lower a law firm's reputation within the community or deter others from associating or dealing with it (and this effect is itself plausibly alleged in ¶¶ 36–39 and 51 of the Complaint).

   viii.   ***Element 2b (… regarding Meneses law): Ms. Overmyer's allegations clearly identify Meneses Law.***

Paragraphs 27 through 30 of the Complaint all cite to Ms. Overmyer's TikTok videos that directly name Meneses Law—that is, the allegations at issue clearly identify Meneses Law, and this part of element 2 is met.

For the most part, Ms. Overmyer does even dispute this, with one exception: with regard to ¶ 30 of the Complaint, Ms. Overmyer argues that the quoted portion of her TikTok video does not refer to Meneses Law. *See* Mot. at 14 (arguing that her statement about "'Corrupt women attorneys' is not 'of and concerning' Meneses Law."). Not only is Ms. Overmyer clearly wrong (in the excerpt included in ¶ 30, Ms. Overmyer specifically references one of Meneses Law's clients as a victim of "corrupt women attorneys"), but even if she were correct: Meneses Law still would have stated a viable claim for defamation with regard to any of the other statements made by Ms. Overmyer and detailed in the Complaint.

### ix. *Element 3 (the requisite degree of fault): Ms. Overmyer's allegations were at least negligent, if not malicious.*

The Complaint plausibly alleges that Ms. Overmyer acted with the requisite degree of fault. It alleges that she has a financial interest in accusing Meneses Law of fraud (Complaint ¶¶ 32–35) and that she made her accusations without any personal knowledge or relevant qualifications—she "has no personal relationship with Meneses Law, is not a client with Meneses Law, is not familiar with Meneses Law's legal practices, and is generally unfamiliar with immigration law as a threshold matter" (Complaint ¶¶ 16–26). These facts support both negligence and actual malice. While Meneses Law contends that the lower "negligence" standard applies (and Ms. Overmyer argues that the higher "actual malice" standard applies—Mot. at 16), that distinction is immaterial here: the Complaint as pleaded satisfies either standard.

### x. *Element 4 (damages): The Complaint specifically identifies damages resulting from Ms. Overmyer's allegations.*

The Complaint plausibly alleges that Ms. Overmyer's defamatory statements harmed Meneses Law. *See* Complaint at ¶¶ 36–39 (raising specific, factually supported allegations that Meneses Law has lost clients and suffered reputational harm due to Ms. Overmyer's defamatory statements). For example, the Complaint plausibly alleges that "Meneses Law has been flooded with calls from current, now-former, and potential clients—all calling specifically about Overmyer's false statements and accusations" and that "Meneses Law has suffered harm and incurred damages, including the loss of reputation, loss of existing and potential clients, and a diminution in business"—including the loss of "at least ten clients." *Id.*

### xi.     *In sum, the Complaint far exceeds the pleading standard.*

Despite Ms. Overmyer's attempt to read in a higher pleading standard, Meneses Law was required only to plead factual content that allows the court to draw the reasonable inference that Ms. Overmyer is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The Complaint far exceeds that standard, so dismissal is inappropriate (but to the extent that the Court disagrees, Meneses Law respectfully requests that it be allowed to amend to correct any deficiencies).

### V.     ARGUMENT AND AUTHORITIES: DEFENDANT'S RULE 12(e) MOTION

In its Complaint, Meneses Law specifically identifies—with dates, URLs, screenshots, excerpts, and descriptions—several posts wherein Ms. Overmyer defames Meneses Law. *See, e.g.*, Complaint at ¶¶ 23, 27–32. Clearly, this is not a situation where Ms. Overmyer "cannot reasonably prepare a response" such that "a More Definite Statement" is required under Rule 12(e).

### A.     Legal Standards:

Rule 12(e) ("Motion for a More Definite Statement") provides that a defendant "may move for a more definite statement of a pleading to which a responsive pleading is allowed ***but which is so vague or ambiguous that the party cannot reasonably prepare a response*. …**" (emphasis added). Rule 12(e) is "not to be used to assist in getting the facts in preparation for trial as such.

16

Other rules relating to discovery, interrogatories and the like exist for this purpose." *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). Rule 12(e) motions are granted sparingly; when "a defendant needs additional information to prepare for trial, discovery is the proper procedure instead of a 12(e) motion[,]" and the motion is even less well received when the movant simply seeks particularization of facts already known to it." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006) (citations and internal quotes omitted). A "motion for a more definite statement will not be granted where the moving party can reasonably respond … but wants the non-movant to plead additional information that could otherwise be later gained through discovery." *Duresseau v. Camping World of Lafayette*, 2018 WL 3624122, at *3 (W.D. La. July 10, 2018) (report and recommendation adopted, 2018 WL 3624121 (W.D. La. July 27, 2018)).

**B.    Argument:**

Ms. Overmyer routinely spends several hours a day livestreaming on TikTok, sharing her allegations against Meneses Law and other immigration firms.[17] It is, in effect, a full-time job for her—she has likely generated hundreds of hours of relevant content since she began. Meneses Law has specifically identified some of these TikTok posts in its Complaint and has described how they are defamatory. *See, e.g.*, Complaint at ¶¶ 23, 27–32 (listing dates, URLs, screenshots, excerpts, and descriptions). This is more than adequate for Ms. Overmyer to identify defamatory statements and prepare a response, so Rule 12(e) does not apply.

Ms. Overmyer does not explain why she believes that she is unable to draft a response based on that level of detail in the Complaint. *See* Mot. at 13 (Ms. Overmyer supports her Rule 12(e) argument with just a conclusory statement that "Defendant cannot frame a responsive

---

[17] *See* Complaint at ¶¶ 31–33

pleading."). Instead, Ms. Overmyer's request for clarification appears to be an attempted partial motion to dismiss. To the extent she wants an exhaustive mapping of each individual defamatory statement to specific injuries suffered by Meneses Law (as she hints at on page 13 of her Motion), that is not an appropriate basis for a Rule 12(e) motion.

## VI.   CONCLUSION

For all the foregoing reasons, Meneses Law respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

AHMAD, ZAVITSANOS & MENSING, PLLC

*/s/ Joseph Y. Ahmad*
**Joseph Y. Ahmad**
Texas Bar No. 00941100
joeahmad@azalaw.com
**Kyle Poelker**
Texas Bar No. 24109339
kpoelker@azalaw.com
**Colin Phillips**
Texas Bar No. 24105937
cphillips@azalaw.com
**Karina Sanchez-Peralta**
Texas Bar No. 24137177
ksanchez@azalaw.com

AHMAD, ZAVITSANOS & MENSING, PLLC
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

**ATTORNEYS FOR PLAINTIFF
MENESES LAW FIRM, PLLC**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 21, 2026, a true and correct copy of the foregoing was filed via the Court's electronic filing system to all parties in compliance with the Texas Rules of Civil Procedure.

*/s/ Joseph Y. Ahmad*
Joseph Y. Ahmad
