| | | |
|---|---|---|
| MENESES LAW, PLLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:26-cv-00552 |
| | § | |
| CAMILA OVERMYER, | § | |
| *Defendant.* | § | Jury Trial Demanded |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION AND BACKGROUND

Defendant Camila Overmyer respectfully submits this Reply in Support of her Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and, in the Alternative, 12(e) (ECF No. 15, the "Motion"). Meneses Law's Response (ECF No. 16, the "Response") never answers the threshold question: what did Ms. Overmyer purposefully do to avail herself of Texas? Instead, the Response substitutes Meneses Law's own Texas contacts—its headquarters, its clients, its Texas-based harm—for the defendant's forum conduct. That analytical error is fatal to every claim.

Meneses Law's Response rests on three propositions, each of which fails upon scrutiny:

***First***, Meneses Law argues that this Court has specific personal jurisdiction over Ms. Overmyer because "Texas was the focal point both of Ms. Overmyer's defamation campaign and of the resultant harm." Resp. at 9. But Meneses Law conflates its *own* contacts with Texas—where it is headquartered—with Ms.

1

Overmyer's contacts with the forum. The Supreme Court has squarely held that "the plaintiff's contacts with the forum State" cannot "be decisive in determining whether the defendant's due process rights are violated." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Ms. Overmyer is an Indiana resident who has never been to Texas, owns no property in Texas, and conducted no business in Texas. She posted content on TikTok—a nationally accessible platform—to a nationwide audience. That Meneses Law happens to be located in Texas does not transform Ms. Overmyer's nationally directed speech into Texas-targeted conduct.

***Second***, Meneses Law contends that its defamation claim is adequately pleaded under *Twombly/Iqbal*. Resp. at 11–16. The Response devotes considerable energy to arguing that the correct standard is *Twombly/Iqbal* rather than the TCPA's "clear and specific evidence" standard. Resp. at 11. Ms. Overmyer does not dispute this. But even under the lower *Twombly/Iqbal* threshold, Meneses Law's Complaint fails because: (a) the statements at issue are constitutionally protected rhetorical hyperbole, not provably false assertions of fact; (b) the Complaint does not identify any specific false factual proposition capable of being proven true or false; (c) to the extent the statements can be construed as factual, the public-record context undermines Plaintiff's bare assertion of falsity; and (d) the Complaint fails to explain how the generalized epithet 'corrupt women attorneys' conveys a verifiable factual assertion of and concerning Meneses Law.

Plaintiff does not meaningfully answer the Motion's substantial-truth defense. Mot. at 15. It offers only a denial of the public-record allegations and a

merits attack on their truth (Resp. at 14), but that misses Defendant's point: the public filings matter because they show the controversy was public, documented, and disclosed—not because this Court must adjudicate those cases on this motion.

Since the Motion was filed, the public-record context has strengthened considerably. *Martinez Garcia v. Meneses Law, PLLC* has been filed in this District.[1] Defendant relies on that complaint only for the existence and public-record contents of the filing, not for the truth of the allegations. That complaint—spanning 60 pages and 325 paragraphs—alleges that Meneses Law operated a "high-volume VAWA filing mill" that, among other things: steered clients into VAWA filings regardless of eligibility; employed "creative writers" to draft abuse narratives without direct client contact; used digitized signatures without informed consent; submitted declarations containing allegedly false, exaggerated, or unauthorized abuse allegations to USCIS; and refused to release client files. The *Lozano* complaint separately places Meneses Law's business practices and immigration-law model in public litigation. And the *Martinez Garcia* complaint itself references multiple simultaneous bar grievances and online reviews describing similar VAWA-related concerns.

The Court need not accept the allegations in those complaints as true. Their significance at this stage is that they show the public-record context in which Ms. Overmyer spoke, the disclosed factual basis for her commentary, and why Plaintiff's

---

[1] Defendant requests judicial notice of the existence, filing date, and contents of the complaint in *Martinez Garcia v. Meneses Law, PLLC*, No. 4:26-cv-03531, ECF No. 1 (S.D. Tex. May 1, 2026), not for the truth of the matters asserted therein, but to establish the public-record context of the controversy, the disclosed factual basis for the challenged commentary, and the procedural fact that similar allegations are now pending in this District. See Fed. R. Evid. 201(b).

bare assertion of falsity does not transform rhetorical advocacy into actionable defamation.

The Response also fails to explain how "corrupt women attorneys" is "of and concerning" Meneses Law, PLLC—a genderless corporate entity. Resp. at 14–15. The Response asserts that Ms. Overmyer "clearly wrong[ly]" denies this, but it never identifies the factual proposition supposedly conveyed by that generalized epithet. The statement may be ugly, but ugliness is not enough. The question is whether the quoted phrase, "all of you corrupt women attorneys," would reasonably be understood as a verifiable factual assertion about Meneses Law, PLLC. Resp. at 15.

***Third***, the Response argues that Rule 12(e) relief is unnecessary because the Complaint "specifically identifies—with dates, URLs, screenshots, excerpts, and descriptions—several posts." Resp. at 16–17. But the Complaint identifies only *two* brief excerpts from Ms. Overmyer's extensive body of content, while claiming damages from "many" unspecified statements. Plaintiff cannot both seek damages from "many" statements and refuse to identify them. The Response does not explain how Ms. Overmyer is supposed to defend against statements that have never been identified.

## II.   LEGAL STANDARD

### A.   Specific Personal Jurisdiction

The Due Process Clause requires that a nonresident defendant have "certain minimum contacts with [the forum State] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For specific jurisdiction, the lawsuit must "arise out of or relate to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Critically, the "relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 285. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

In *Walden*, the Court clarified that *Calder v. Jones*, 465 U.S. 783 (1984), does not stand for the proposition that a defendant's knowledge that a plaintiff will feel harm in the forum suffices for jurisdiction. Rather, "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Walden*, 571 U.S. at 287. In *Calder* itself, the defendants relied on California sources, wrote about the plaintiff's California activities, and caused reputational harm that was felt specifically by the California public. *Id.*

The Fifth Circuit has applied these principles to internet-based defamation claims. In *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), the

court held that Texas lacked specific jurisdiction over HuffPost despite the article's subject being a Texas resident, because "[t]he Constitution permits specific jurisdiction only where the defendant himself purposefully creates the forum contacts from which the plaintiff's claims arise. And as to a libel claim, a website selling ads, merchandise, and ad-free experiences to all comers is not enough." *Id.* at 326. The court required that the forum state be "the focal point both of the [alleged libel] and of the harm suffered." *Id.* at 318 (quoting *Calder*, 465 U.S. at 789). Jurisdiction was denied because the article "never mentioned Texas, never discussed [plaintiff's] activities there, and was not aimed at Texans any more than at residents of other states." *Id.* at 318.

Similarly, in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), the Fifth Circuit denied jurisdiction where an internet bulletin-board post about a Texas-resident plaintiff was directed at a national audience. The court held the article was "not directed at Texas readers as distinguished from readers in other states," *id.* at 473, and that the defendant was not even "chargeable with knowledge of the forum at which his conduct [was] directed," *id.* at 475.

## B.  Failure to State a Defamation Claim

To survive a Rule 12(b)(6) motion, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Texas law, defamation requires: (1) publication of a false statement of fact to a third party,

(2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

**Rhetorical hyperbole.** Not all statements that sound accusatory are actionable. The Supreme Court has long recognized that "rhetorical hyperbole" and "vigorous epithets" are constitutionally protected. In *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 14 (1970), the Court held that use of the word "blackmail" to describe a real estate developer's hardball negotiations was "no more than rhetorical hyperbole, a vigorous epithet" that "[n]o reader could have thought" was charging an actual crime. The Texas Supreme Court applied the same principle in *Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355, 366–68 (Tex. 2023), holding that characterizing abortion providers as "criminal organizations" engaged in "murder" was protected opinion because a reasonable reader understood those terms as moral and political advocacy, not reports of specific criminal conduct. The court noted that the defendant "does not refer to the Penal Code nor to any Texas criminal law. He does not falsely claim that the plaintiffs have been arrested or prosecuted." *Id.* at 368.

**Provably false facts vs. opinion.** A statement is actionable in defamation only if it is "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). Where a speaker's statements are based on disclosed facts and amount to a characterization of those facts, they are protected opinion. *Id.* at 18–20. A statement "on matters of public concern" that 'does not contain a provably false factual connotation will receive full

constitutional protection" *Id.* at 20. For a statement to be actionable in defamation, it must "expressly or impliedly assert facts that are objectively verifiable." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied).

**Substantial truth.** "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted). Under the substantial-truth doctrine, a statement is not actionable if it is substantially true—that is, if the "gist" of the statement is accurate even if specific details are imprecise.

**"Of and concerning."** A defamation claim requires that the allegedly defamatory statement be "of and concerning" the plaintiff. *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). Where a statement is directed at a broad or indefinite group, rather than at a specific plaintiff, the plaintiff must demonstrate that a reasonable reader would understand the statement to refer specifically to the plaintiff. See RESTATEMENT (SECOND) OF TORTS § 564A (AM. L. INST. 1977).

**Fault and damages for public-concern speech.** Where defamatory speech involves a matter of public concern, the First Amendment constrains the available remedies. A private-figure plaintiff may recover actual damages upon proof of negligence, but presumed and punitive damages require proof of actual malice—i.e., knowledge of falsity or reckless disregard for truth. *Gertz v. Robert*

*Welch, Inc.*, 418 U.S. 323, 349–50 (1974); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985).

## C.     Rule 12(e)—More Definite Statement

Rule 12(e) provides that a party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion "is not to be used to assist in getting the facts in preparation for trial as such. Other rules relating to discovery, interrogatories and the like exist for this purpose." *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).

## III.     ARGUMENT

## A.     This Court Lacks Specific Personal Jurisdiction Over Ms. Overmyer.

The Response's jurisdictional argument depends on a fundamental analytical error: it treats Meneses Law's Texas presence as a proxy for Ms. Overmyer's forum contacts. But *Walden* forbids exactly this approach. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290.

The Response contends that "Ms. Overmyer's Motion does not dispute most of Meneses Law's jurisdictional facts." Resp. at 8. This mischaracterizes the Motion. Ms. Overmyer does not dispute that Meneses Law is a Texas firm, that it has Texas clients, or that it suffered harm in Texas. She disputes that *she* purposefully directed her conduct at Texas. These are entirely different inquiries. *Walden* makes

clear that "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285.

The Response relies heavily on *Hawbecker v. Hall* for the proposition that social media posts can confer jurisdiction. Resp. at 7–8, 11. But *Hawbecker* is readily distinguishable. There, the defendant "expressly aimed online contacts," including Facebook posts and emails, "to Texas residents"—specific, identified individuals in the forum. 88 F. Supp. 3d at 729. Ms. Overmyer posted TikTok videos to a nationally accessible platform with 49,000 followers spread across the country. She did not send private communications to Texas residents, did not target specific Texas individuals, and did not tailor her content to a Texas audience as distinct from any other audience.

The more apposite authority is *Johnson* and *Revell*. In *Johnson*, the Fifth Circuit denied jurisdiction over HuffPost even though the article was *about* a Texas plaintiff and even though HuffPost earned revenue from Texas readers. 21 F.4th at 319–22. The court held that content posted to a nationally accessible website does not satisfy *Calder*'s focal-point test simply because the plaintiff resides in the forum. *Id.* at 326. In *Revell*, the Fifth Circuit reached the same result where an internet bulletin-board post about a Texas resident was "not directed at Texas readers as distinguished from readers in other states." 317 F.3d at 473.

Plaintiff's best jurisdiction facts are that Ms. Overmyer mentioned Texas regulators, hosted Texas-based guests on her livestreams, referred viewers to a Texas attorney, and encouraged complaints to the Texas Attorney General and the

State Bar of Texas. Defendant does not deny those references exist. But they show topic and context—not forum-directed availment. That is not *Calder* targeting. A speaker does not purposefully avail herself of Texas merely by discussing a Texas-based plaintiff on a national social-media platform, mentioning Texas regulators, or interacting with viewers who identify as Texans. *Calder* requires the forum to be "the focal point both of the [alleged libel] and of the harm suffered." 465 U.S. at 789. References to Texas regulators, Texas viewers, or a Texas attorney do not show that the allegedly defamatory content was aimed at Texas as a forum rather than at a nationwide Spanish-speaking immigration audience concerned with VAWA filings.

The Response argues that Ms. Overmyer "applies the wrong legal standard" by focusing on general rather than specific jurisdiction. Resp. at 10. This is incorrect. The Motion explicitly addresses specific jurisdiction and argues that Ms. Overmyer's nationally directed TikTok posts do not constitute purposeful availment of the Texas forum. Mot. at 11–12. The Response's assertion that Ms. Overmyer "repeatedly mentioned Texas" in her posts, Resp. at 9, does not establish purposeful availment. Mentioning a state is not the same as targeting a state. The article in *Johnson* was entirely about a Texas plaintiff, yet jurisdiction was denied. The defendant in *Revell* wrote about a Texas resident's activities, yet jurisdiction was denied. Ms. Overmyer's mention of Texas in the course of discussing a Texas-based law firm does not transform her nationally directed advocacy into Texas-targeted conduct.

Nor does the Response's assertion that Ms. Overmyer "hosted guests from Texas" and "sought assistance from clients of Meneses Law" establish jurisdiction. Resp. at 9–10. The Supreme Court has expressly cautioned that "this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." *Walden*, 571 U.S. at 290 n.9. The Response asks this Court to treat online interaction with Texans as equivalent to purposeful forum contact—but the Supreme Court reserved that question precisely because it requires careful analysis, not the automatic equivalence Plaintiff assumes.

**B.     The Complaint Fails to State a Defamation Claim.**

**1.      The statements at issue are constitutionally protected rhetorical hyperbole.**

The Response argues that Ms. Overmyer's statements are "concrete statements of purported fact" because she accused Meneses Law of filing "FALSE VAWA" petitions. Resp. at 12–13. But the Response ignores the context in which these statements were made—a heated advocacy campaign on social media by a non-lawyer urging followers to submit testimony and file bar grievances. This is precisely the type of "vigorous epithet" that *Greenbelt* and *Lilith Fund* protect.

The Response attempts to distinguish *Lilith Fund* by arguing that there the defendant called abortion "murder" and the abortion provider a "criminal organization," and "the defendant was always clear on its basis for those characterizations." Resp. at 13. But the same is true here. Ms. Overmyer was clear

about the basis for her characterizations: she disclosed client testimonials, referenced public complaints, and invited viewers to examine the evidence for themselves. Her statements were opinions based on disclosed facts—precisely the category *Milkovich* protects. 497 U.S. at 18–20. When a speaker says "this is robbery" in the context of a consumer-advocacy campaign, no reasonable listener understands it as an accusation of criminal theft any more than the citizens in *Greenbelt* were accusing their developer of criminal blackmail. 398 U.S. at 14.

Plaintiff's strongest phrase—"FALSE VAWA WITH MENESES"—still must be read in the whole TikTok context. It was not pleaded as a specific factual accusation identifying a particular petition, client, filing date, attorney, USCIS submission, or false statement. It was the caption to advocacy commentary built around disclosed client complaints and a call for testimony. If Plaintiff wants to sue over a factual accusation that a specific VAWA petition was false, Rule 8 requires it to identify that accusation and why it is false. It has not done so. And the public-record context now includes a federal complaint alleging that Meneses Law submitted a VAWA declaration containing false and unauthorized abuse allegations in a client's name. That does not adjudicate truth, but it defeats Plaintiff's effort to treat the phrase as context-free defamation per se.

## 2. The Complaint fails the "of and concerning" requirement.

The Response devotes one paragraph to this issue, asserting that Ms. Overmyer "clearly wrong[ly]" argues that "corrupt women attorneys" does not refer to Meneses Law. Resp. at 15. But the question is whether the quoted phrase—"all of

you corrupt women attorneys"—would reasonably be understood as a verifiable factual assertion about Meneses Law, PLLC—a genderless professional limited liability company. The Complaint identifies no specific factual proposition attributable to this statement that is verifiable as true or false. The Response's only answer is that "Ms. Overmyer specifically references one of Meneses Law's clients as a victim of 'corrupt women attorneys.'" Resp. at 15. Plaintiff's response points to surrounding references to Meneses, but it still never identifies the factual proposition supposedly conveyed by that generalized epithet. A reference to a client does not transform a rhetorical attack on an indefinite class into a factual assertion "of and concerning" a named corporate entity.

**3. The public-record context undermines Plaintiff's bare assertion of falsity.**

Plaintiff portrays Ms. Overmyer's speech as baseless internet clout-chasing. But the public record now includes a federal complaint in this District alleging the same central controversy: that Meneses Law used a high-volume VAWA pipeline, obscured the nature of VAWA filings from clients, generated abuse declarations through non-attorney intake and "creative writing" processes, reused digitized signatures, submitted filings to USCIS, and resisted file production. Defendant does not ask the Court to adjudicate those allegations here. Their existence matters because they confirm the public, documented context in which Ms. Overmyer spoke.

To the extent Plaintiff characterizes Ms. Overmyer's statements as factual, the public-record allegations in *Martinez Garcia* make Plaintiff's bare falsity

pleading implausibly thin. To be clear: Defendant relies on those filings for their existence, contents, and public-record context—not for the truth of the allegations. Plaintiff cannot simply say "false" while suing over commentary whose gist matches detailed allegations now pleaded against it in this District. At minimum, the overlap underscores why Plaintiff must identify the precise statement, the precise factual proposition allegedly conveyed, and why that proposition is false. The Response's dismissal of the *Lozano* allegations as "fabricated" (Resp. at 14) and its insistence that Ms. Overmyer's statements are "unequivocally false" (Resp. at 14) are precisely the kind of contested factual disputes that cannot be resolved on a motion to dismiss.

**4.    The Complaint fails to adequately plead fault and damages.**

The Response asserts that Ms. Overmyer's statements "were at least negligent, if not malicious." Resp. at 15. This is a legal conclusion, not a factual allegation. The Complaint alleges that Ms. Overmyer acted with a "financial interest" in making her accusations (Compl. ¶¶ 32–35), but identifying a motive is not the same as pleading facts showing fault.

Plaintiff's own theory places the speech in the public-concern category. The challenged commentary concerns alleged immigration-law fraud, abuse of federal VAWA processes, USCIS filings, and harm to vulnerable immigrant clients. At minimum, the Complaint does not plead actual malice sufficient to support presumed damages, exemplary damages, or defamation per se remedies for speech on a matter of public concern. See *Gertz*, 418 U.S. at 349–50; *Dun & Bradstreet*, 472

U.S. at 761. To the extent Plaintiff seeks actual damages under a negligence theory, it still fails to connect any specific statement to any specific lost client. The damages theory remains conclusory: the Response points to allegations that Meneses Law lost "at least ten clients" and was "flooded with calls." Resp. at 16. But the Complaint draws no causal link between any identified statement and any identified lost client.

## C. Rule 12(e) Relief Remains Appropriate.

The Response argues that Rule 12(e) is unnecessary because the Complaint identifies "dates, URLs, screenshots, excerpts, and descriptions." Resp. at 16. But by Plaintiff's own framing, Ms. Overmyer has produced extensive livestream and social-media content across multiple platforms. The Complaint quotes two brief excerpts and then seeks damages for "many" additional unspecified statements. Mot. at 12–13.

Plaintiff cannot both plead a "campaign" and seek damages for "many" statements while identifying only selected excerpts. Rule 12(e) does not require Plaintiff to prove damages now, but it does require Plaintiff to identify the allegedly defamatory statements on which liability rests. That requirement matters especially here, where the public record contains overlapping allegations about Meneses Law's VAWA practices. Without the exact words sued upon, Defendant cannot evaluate truth, substantial truth, opinion, rhetorical hyperbole, privilege, context, limitations, or actual malice. Ms. Overmyer cannot frame a response—including truth and privilege defenses—to statements that have not been

identified. The Response does not explain how Ms. Overmyer is supposed to prepare affirmative defenses for content that the Complaint describes only as existing somewhere within an extensive body of video. Dismissal is warranted on the merits, but if the Court is not yet prepared to dismiss, a Rule 12(e) order requiring Plaintiff to identify the specific statements on which liability rests is the minimum remedy that due process and fair defense require.

### IV.    CONCLUSION

For the foregoing reasons, Defendant Camila Overmyer respectfully requests that this Court grant her Motion to Dismiss in its entirety. Even accepting Plaintiff's exhibits, this is national social-media advocacy about a public controversy, not Texas-directed tortious conduct. And even under *Twombly/Iqbal*, Plaintiff cannot base a defamation case on generalized epithets plus unidentified "many statements" without pleading the specific false factual propositions at issue. Plaintiff has identified no Texas-directed conduct by Ms. Overmyer; no specific false factual proposition; no actionable "of and concerning" statement as to the corporate plaintiff; no adequately pleaded falsity, fault, or damages; and no fair way to defend against unidentified "many" statements. In the alternative, if the Court declines to dismiss, Ms. Overmyer requests an order requiring Meneses Law to replead with the specificity required to enable a meaningful defense.

Respectfully submitted,

**AVANTI LAW GROUP, PLLC**
<u>By: /s/ Robert Anthony Alvarez, Sr.</u>
Robert Anthony Alvarez, Sr.
Fed. Bar No. P66954
Avanti Law Group, PLLC
600 28th St. Sw
Wyoming, MI 49509
616-257-6807
ralvarez@avantilaw.com

Jonathon A. Muñoz
Texas Bar No. 24124571
Law Nerd LLC
2112 S. Shary Rd., Ste. 13
Mission, Texas 78572
lawnerdllc@gmail.com


*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 05, 2026, a true and correct copy of the foregoing was filed via the Court's electronic filing system to all parties in compliance with the Federal Rules of Civil Procedure.

/s/ Robert Anthony Alvarez, Sr.
Robert Anthony Alvarez, Sr.
